IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BNP HOLDINGS LLC,

              Plaintiff,

    v.

INTUIT INC.,

              Defendant.

CIVIL ACTION

NO. 22-65

**OPINION**

**Slomsky, J.**                                                          **October 11, 2023**

## I.      INTRODUCTION

On January 18, 2022, Plaintiff BNP Holdings, LLC ("Plaintiff" or "BNP") filed a

Complaint against Intuit Inc. ("Defendant" or "Intuit") (Doc. No. 1) alleging patent

infringement under 35 U.S.C. § 271.[1]  Plaintiff alleges that Defendant infringed United States

Patent No. 6,374,229, titled "Integrated Internet Facilitated Billing, Data Processing and

Communication System" ("the '229 Patent").

On March 11, 2022, Defendant filed a Motion to Dismiss the Complaint (Doc. Nos. 12-

13).  Defendant alleges that '229 Patent covers ineligible subject matter under 35 U.S.C. § 101.[2]

---

[1]  35 U.S.C. § 271(a) provides:

> Except as otherwise provided in this title, whoever without authority makes,
> uses, offers to sell, or sells any patented invention, within the United States or
> imports into the United States any patented invention during the term of the
> patent therefor, infringes the patent.

[2] 35 U.S.C. § 101 provides:

> Whoever invents or discovers any new and useful process, machine,
> manufacture, or composition of matter, or any new and useful improvement

1

(Doc. No. 13 at 6.)  On April 8, 2022, Plaintiff filed a Response (Doc. No. 15) and on April 18, 2022, Defendant filed a Reply (Doc. No. 16).[3]  On November 18, 2022, the Court held a hearing on the Motion to Dismiss.  On March 10, 2023, Defendant filed a Supplemental Memorandum in support of the Motion to Dismiss (Doc. No. 26) and on March 20, 2023, Plaintiff filed a Response to the Supplemental Memorandum (Doc. No. 27.)  Defendant's Motion (Doc. Nos. 12-13) is now ripe for disposition.  For reasons that follow, Defendant's Motion to Dismiss will be granted.

## II.    FACTUAL BACKGROUND

In the Complaint, Plaintiff alleges that Defendant infringed United States Patent No. 6,374,229, titled "Integrated Internet Facilitated Billing, Data Processing and Communication System" ("the '229 Patent").  (Doc. No. 1 at 5.)  Generally, the '229 Patent is for an electronic billing system alleged to improve upon prior electronic billing systems by creating a billing system network rather than a system previously reliant on billing software loaded onto individual computers.  See '229 Patent, Claim 1 ("An Integrated internet facilitated billing, data processing, and communication system. . .")

In this action, Plaintiff alleges that Defendant only infringed Claim 1 of the '229 Patent. Claim 1 encompasses the use of the electronic billing system that subscribers can access via the internet.[4]  See '229 Patent, Claim 1 ("a database server and a home page of a website which

---

thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

[3]  This case was originally assigned to the Honorable Colm F. Connolly, Chief Judge of the United States District Court for the District of Delaware.  On November 9, 2022, it was reassigned for all further proceedings to the Honorable Joel H. Slomsky, a United States District Court Judge for the Eastern District of Pennsylvania.

[4]  The '229 Patent was invented by Dr. Richard Krumholz and Ms. Susan Lowrey to improve on   prior internet-related billing systems.  (Doc. No. 1 at 2.)

provides access via an internet service provider (ISP) to said database server. . .").  Prior to this

patent, billing for services was traditionally rendered by outsourced professionals or businesses

that purchased software to download onto computers.  (See Doc. No. 1-1 at 7.)  Patent '229

creates an online website to facilitate the same billing services.  Claim 1 of the '229 Patent is

for:

> 1. An integrated internet facilitated billing, data processing, and communication system comprising:
>    a database server and a home page of a website which provides access via an internet service provider (ISP) to said database server by a plurality of browser-based subscribers each of which have electronic access to said home page via a modem and the ISP;
>    said home page providing only secure access by each browser-based subscriber to one of a plurality of subscriber areas within said system;
>    means for providing electronic transfer of substantially only billing and data entry forms to the browser-based subscriber upon request, data entered on said forms, when electronically returned to a corresponding said subscriber area, then entered into said database server, said database server then, utilizing an appropriate application software thereon, producing billing invoices and statements to clients and customers for each corresponding browser-based subscriber;
>    means for providing real time electronic viewing and query access of data and billings stored in said database server by each corresponding browser-based subscriber;
>    a PC type computer electronically connected to said database server for controlling said forms as required and responding to queries entered by each browser-based subscriber.

'229 Patent, Claim 1.  In sum, the '229 Patent allows secure access by subscribers to a home

page.  (See id.)  Subscribers can then enter data that is transferred to a database server to

produce billing invoices and statements for clients of the subscriber.  (See id.)  Finally, the

server provides real time viewing "of data and billings stored in said database server" which the

subscriber accesses the information through a "PC type computer."  (Id.)  Overall, the '229

Patent improved upon prior electronic billing systems by allowing subscribers to create invoices

apparently without downloading additional software applications.  (Doc. No. 1 at 2-3.)

### III.    STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive the motion to dismiss, the complaint need not contain "detailed factual allegations," but it must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  In assessing the plausibility of a claim, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002).  The Court's review is limited to the allegations in the complaint, exhibits attached to the complaint, and documents incorporated by reference.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); El-Hewie v. Bergen Cty., 348 F. App'x 790, 794 (3d Cir. 2009).

It is well-settled that courts may determine patent eligibility under 35 U.S.C. § 101 at the Rule 12(b)(6) stage.  SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373–74 (Fed. Cir. 2016)); see also Voter Verified, Inc. v. Election Sys. & Software LLC, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility); Maxon, LLC v. Funai Corp., 726 F. App'x 797, 798 (Fed. Cir. 2018) (same).  Determining eligibility at the pleadings stage is possible, however, "only when there are no factual allegations

that, taken as true, prevent resolving the eligibility question as a matter of law." Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018).

As noted, Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The United States Supreme Court has recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. Alice Corp. Pty. v. CLS Bank Int'l, 573 U.S. 208, 216 (2014). These exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013) (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 77-78 (2012)); see also Alice, 573 U.S. at 216. A claim to any one of these exceptions is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." Berkheimer v. HP Inc., 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." Alice, 573 U.S. at 217; see also Mayo, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. Alice, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc., 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed to a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – i.e., "an element or combination of elements that is 'sufficient to ensure

that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Alice, 573 U.S. at 217-18 (alteration in original) (quoting Mayo, 566 U.S. at 72-73).

## A.  Step One of the Alice Framework

At step one of Alice, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015); see also Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter).  In addressing step one of Alice, a court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. Alice, 573 U.S. at 217; see also McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1313 (Fed. Cir. 2016).  "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'"  Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1050 (Fed. Cir. 2016).

## B.  Step Two of the Alice Framework

At step two of Alice, in searching for an inventive concept, a court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." Alice, 573 U.S. at 218; see also McRO, 837 F.3d at 1312.  This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" Berkheimer, 881 F.3d at 1367 (citation and internal quotation marks omitted); see also Mayo, 566 U.S. at 73.  "The inventive concept inquiry requires more than recognizing that each claim

element, by itself, was known in the art.... [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. Berkheimer, 881 F.3d at 1368.

At both steps of the Alice framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." TMI Sols. LLC v. Bath & Body Works Direct, Inc., No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1294 (Fed. Cir. 2016)); see also Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1334 (Fed. Cir. 2016).

## IV. ANALYSIS

### A. Claim 1 of the '229 Patent is Directed to a Patent-ineligible Concept and Fails Step One of the Alice Framework

In Defendant Intuit's Motion to Dismiss (Doc. Nos. 12-13), Defendant submits that the '229 Patent is barred from patent protection under § 101 because it is directed to an abstract idea. (Doc. No. 13 at 18.) It asserts that "the '229 Patent is directed to the abstract idea of billing, which is a fundamental and conventional business practice." (Id.) Further, "[t]he specification and claims focus on an internet-based electronic billing system, which amounts to nothing more than a method of organizing human activity." (Id. at 18-19). Finally, Defendant argues "[t]his concept is similar to other fundamental economic practices--implemented with computing technology--that courts have consistently held to be abstract ideas" and is therefore patent-ineligible under § 101. (Id. at 12.) The Court agrees, and for reasons that follow finds that the '229 Patent is directed to a patent-ineligible abstract idea.

As described above, to assess whether a claim is patent-eligible, courts engage in a two-step analysis under Alice.  Regarding the first step of the Alice framework, the relevant question for the Court is whether a Claim is directed to patent-ineligible subject matter.  Internet Patents Corp., 790 F.3d at 1346.  Thus, the relevant inquiry here is whether Claim 1 in the '229 Patent is directed towards an abstract idea, as Defendant argues.  (See Doc. No. 13 at 12.)

In WhitServe LLC v. Donuts Inc., the court found an online database patent to be directed to an abstract idea because "[t]he focus of the claims is simply to use computers and a familiar network as a tool to perform a fundamental economic practice involving simple information exchange."  WhitServe LLC v. Donuts Inc., 809 Fed.Appx. 929, 933 (Fed. Cir. 2020).  As the court noted: "[c]arrying out fundamental economic practices involving simple information exchange is an abstract idea. . . [a]nd use of standard computers and networks to carry out those functions--more speedily, more efficiently, more reliably--does not make the claims any less directed to that abstract idea."  Id.  Similarly, the court in Realtime Tracker, Inc., v. RELEX, Inc., found a timekeeping patent to be ineligible because it focused on "the abstract idea of timekeeping through the use of generic computer parts."  Realtime Tracker, Inc., v. RELEX, Inc., No. 21-Civ-8815, 2023 WL 2391110, at *13 (S.D.N.Y. Mar. 7, 2023).  In Weisner v. Google LLC, the court found that a patent for a "digital travel log" was directed towards an abstract idea.  Weisner v. Google LLC, 51 F.4th 1073 (Fed. Cir. 2022).  The court noted that "[h]umans have consistently kept records of a person's location and travel in the form of logs, diaries, journals and calendars" and "[a]utomation or digitization of a conventional method of organizing human activity like the creation of a travel log on a computer does not bring the claims out of the realm of abstractness."  Id. at 1083; See Credit Acceptance Corp. v. Westlake Servs., 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("mere automation of manual processes using

generic computers does not constitute a patentable improvement in computer technology"); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and storage is undisputedly well-known.").

These decisions support the argument that the '229 Patent is not patent-eligible. First, Claim 1 of the '229 Patent is directed to fundamental economic practices involving simple information exchange, which is an abstract idea. Claim 1 is an "integrated internet facilitated billing, data processing and communication system." '229 Patent cl. 1. The claimed billing system, like the internet database in Whitservice, the timekeeping in Realtime, and the digitized travel log in Weisner, at its core is an economic practice of conventional human activity. The patent itself recognizes that the traditional approach to creating billing invoices and statements is done through software or "trained personnel" but claims that "none of this known prior art brings together the best of the traditional approaches while taking advantage of current advances in computer software and hardware technologies." (Doc. No. 1-1 at 7.) From this language it is evident that Claim 1 of the '229 Patent is directed toward creating billing invoices and statements, a traditional human activity very similar to the economic activities that courts have found to be an abstract idea.

Second, as illustrated in Weisner and Credit Acceptance, merely adding a computer or other technology to a conventional method of human activity "does not constitute a patentable improvement in computer technology." Credit Acceptance, 859 F.3d at 1055. In Claim 1, the patent is described as being comprised of "a database server and a home page of a website which provides access via an internet service provider (ISP). . . data entered on [electronic] forms. . .[and] means for providing real time electronic viewing" all on "a PC type computer

electronically connected to said database server." '229 Patent Claim 1.  Readily apparent is that this process involves no more than use of generic computer components with input from a user because the patent provides no additional technical details.  See id.  In accordance with precedent, utilizing existing internet technology does not transform this activity into a patentable improvement in computer technology.  As other courts have found in comparable situations, a patent must do more than "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014); see also Mortg. Grader, Inc. v. First Choice Loan Serv. Inc., 811 F.3d 1314, 1325 (Fed. Cir. 2016) ("[A]fter Alice, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.")  Here, the '229 Patent has this deficiency.

Plaintiff BNP asserts that Claim 1 is not abstract because its main goal is to "improve the functionality of a network" and includes "specific algorithms and structure necessary to improve the functioning of a networked invoicing system."[5]  (Doc. No. 15 at 19.)  This argument fails for two reasons.  First, BNP has not identified an "algorithm or structure" that was unknown prior to filing the '229 Patent nor how the patent has improved the functionality of the network or computer itself.  Second, much of the prior art section of the patent references components that are listed in Claim 1, such as, a database server, an ISP, a modem, real time access, a Windows computer and a remote subscriber computer.  In this regard, no improvement to computer functionality itself is specifically described in Claim 1.  Accordingly, the '229

---

[5] Plaintiff BNP contends that the '229 Patent has an extensive litigation history, including a Markman decision and a hearing on a motion to dismiss which are "subject to judicial notice." (Doc. No. 15 at 11-14).  The Court has evaluated the prior history and still concludes that the '229 Patent is patent-ineligible under the Alice analysis.

Patent does not satisfy step one of the <u>Alice</u> framework to be patent-eligible.  Simply put, it

merely describes the abstract idea of an electronic billing system which is ineligible for

patenting.  Thus, Claim 1 of the '229 Patent is not eligible for patent protection under 35 U.S.C.

§ 101.

**B. The Claims in the '229 Patent do not Contain an "Inventive Concept" Transforming the Abstract Idea into a Patent-Eligible Application.**

Plaintiff BNP contends that even if Claim 1 of the '229 Patent is patent-ineligible under

step one of the <u>Alice</u> analysis, it is still patent-eligible under step two of the <u>Alice</u> test.  (Doc.

No. 15 at 20-21.)  Defendant disagrees, asserting that Claim 1 contains no inventive concept

because "[t]here is simply no description in the claim or specification as to how the purported

invention is specially programmed to operate any differently than the prior art to perform the

steps set forth in the claim."  (Doc. No. 13 at 21).  Plaintiff argues to the contrary that the '229

Patent claim "overcame deficiencies in the prior art through novel and non-obvious

improvement" and that "all reasonable inferences" must be "drawn in favor of BNP."  (Doc. No.

15 at 23.)  But even when the Court views all reasonable inferences in favor of BNP, the '229

Patent still does not contain an "inventive concept" that transforms the abstract idea into a

patent-eligible application.

To be an "inventive concept" the patent must "involve more than performance of 'well-

understood, routine, [and] conventional activities previously known to the industry.'"

<u>Berkheimer v. HP, Inc.</u>, 881 F.3d 1360, 1367 (Fed. Cir. 2018).  And simply reciting "concrete,

tangible components is insufficient to confer patent eligibility to an otherwise abstract idea."  <u>In

re TLI Communications LLC Patent Litigation</u>, 823 F.3d 607, 613 (Fed. Cir. 2016).

Fundamentally, step two "look[s] more precisely to what the claim elements add."  <u>Elec. Power

Grp., LLC v. Alstom S.A.</u>, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

In Realtime Tracker, Inc., v. RELEX, Inc., the court found that even when evaluating the time-keeping patent's claims "individually and as an ordered combination" the sequence of steps does not constitute an "inventive concept." Realtime Tracker, Inc., v. RELEX, Inc., No. 21-Civ-8815, 2023 WL 2391110, at *9 (S.D.N.Y. Mar. 7, 2023) (citing Alice, 573 U.S. at 217). Rather, the court found that the "claims describe a generic timekeeping process facility by the mere application of generic computer components" and that the functions are "well-understood, routine, conventional activities previously known to the industry." Id. at 15 (citing Alice, 573 U.S. at 217). Further, the Supreme Court stated in Alice that claims are patent-ineligible if they do "no more than require a generic computer to perform generic computer functions," such as by performing the "generic" functions of "electronic recordkeeping," "obtain[ing] data," and "issu[ing] automated instructions." Alice, 573 U.S. at 225. Finally, courts have held that allowing for secure and private access to data is not inventive. See Card Verification Solutions, LLC v. Citigroup, Inc., No. 13–C–6339, 2014 WL 4922524 at*3 (N.D. Ill. Sept. 29, 2014) (finding that claims involving a method of "passing confidential information through a trusted, third-party intermediary to ensure that ... necessary confidential information remains secure" were directed to a patent-ineligible abstract idea) (denying motion to dismiss without prejudice on other grounds).

These decisions illustrate that Claim 1 of the '229 Patent is not patent-eligible under step two of the Alice framework. The patent fails because it does not include an inventive concept that transforms the abstract idea into a patentable concept. The stated purpose of the '229 Patent is to utilize the existing internet to "avoid the need to purchase expensive equipment or to maintain personnel or infrastructure for billing of services while providing real time access to stored data." '229 Patent. Like the decision in Realtime and Alice, merely combining a

12

computer and internet component is not an inventive concept that will transform a patent-

ineligible concept into one that is eligible.  See e.g., buySAFE, Inc. v. Google, Inc., 765 F.3d

1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a

network— with no further specification—is not even arguably inventive.")  And even the

movement of a generic software application from a subscriber's computer to a server at best is

merely rearranging an abstract idea.  It does not make it inventive.  It is simply an improvement

to make billing and data entry and access faster by using the internet, but still involves a

fundamental economic practice which is an abstract idea that is patent-ineligible.

Despite the '229 Patent's shortcomings, Plaintiff still argues that the patent contains an

"inventive" concept.  Plaintiff gives two examples.  Neither, however, are "inventive" concepts.

First, Plaintiff argued in its memorandum and at the hearing that the "subscriber area" is

inventive.[6]  (See Doc. No. 25 at 46.)  Plaintiff's complaint states that the "web server is further

limited to include the structure of subscriber areas to in part provide security and privacy for

each corresponding subscriber."  (Doc. No. 1 at 4 (emphasis added)).  In viewing this claim both

individually and as an ordered combination, it is not inventive.  The subscriber area does not

improve computer or network security technology.  Rather, it provides secure access to users to

---

[6] In Plaintiff's Brief in Opposition to the Motion to Dismiss, Plaintiff claims that Defendant
"has not even touched on the interaction of the Claim 1 'subscriber area' and 'database server,'"
or the improved system derived therefrom."  (Doc. No. 15 at 22.)  On November 18, 2022, in
the hearing on the Motion to Dismiss, the record reflects the following exchange regarding the
subscriber area:

> The Court: Yes, what in the 229 patent is the 'something more' --
> Mr. Haller: It –
> The Court: -- that takes it out of just being abstract?
> Mr. Haller:  As one example – as one example is a subscriber area. . .

(Doc. No. 25 at 18.)

prevent other users from seeing the sensitive data they imported.  Securing confidential

information is not an inventive concept.  See Card Verification Solutions, LLC v. Citigroup,

Inc., No. 13–C–6339, 2014 WL 4922524 at*3 (N.D. Ill. Sept. 29, 2014).  The subscriber area

does not overcome the fact that the '229 Patent merely describes securely sending information

over the internet using a server and computer.[7]

  Second, Plaintiff contends that Claim 1 as a whole is inventive because "Claim 1 recites

steps (ignored by Intuit) that improve the functionality of a network."  (Doc. No. 15 at 19.)

Plaintiff then quotes Enfish, LLC v. Microsoft Corp., for the proposition that "[m]uch of the

advancement made in computer technology consists of improvements to software that, by their

very nature, may not be defined by particular physical features but rather by logical structures

and processes."  Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1339 (Fed. Cir. 2016).  In sum,

Plaintiff's argument is that the overall steps of Claim 1 by its "structures and processes"

constitute an advancement in computer technology.  To support this notion, Plaintiff concludes

that the United States District Court for the Middle District of Florida already found in an Order

ruling on Claim Construction that the '229 Patent's Specification provisions "considered

together, adequately describe the algorithm, or process, by which the computer performs the

function[s]."[8]  ((Doc. No. 15 at 19) (citing BillingNetwork Patent, Inc., v. Cerner Physician

---

[7] The "subscriber area" touted by Plaintiff is comparable to a personal account in online
banking.  With online banking, when users input their identification and password they only
have access to their own sensitive data and not access to confidential information of others
who also have such information stored with the online bank.  The concept of securing
information is not inventive.  See also MyMedicalRecords, Inc. v. Walgreen Co., 2014 WL
7339201 at *5 (C.D. Cal. Dec. 23, 2014) (finding that "collecting, accessing, and managing
health records in a secure and private manner—on the Internet" is an abstract idea).

[8] An algorithm is "broadly: a step-by-step procedure for solving a problem or accomplishing
some end."  Algorithm, Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/algorithm Accessed.

Practice, Inc., No. 8:04-cv-1515-T-27MAP., 2006 WL 263601 at *19 (M.D. Fla. Feb. 2, 2006))).
But the court's full finding is that the "algorithm" allows the computer to "perform[] the
function of transferring billing and data entry forms to the subscriber upon request and then
back to the subscriber area and database server once information is entered."[9] BillingNetwork,
2006 WL at *19.  This algorithm does not "improve the functioning of a networked invoicing
system" as Plaintiff contends; it merely transfers the subscriber's information to different parts
of the location for processing.  As discussed above, moving data around on the internet is not an
inventive concept.  See e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l
Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and
storage is undisputedly well-known.")

Finally, a court may determine patent eligibility under § 101 at the Rule 12(b)(6) Motion
to Dismiss stage "only when there are no factual allegations that, taken as true, prevent
resolving the eligibility question as a matter of law." Aatrix Software, Inc. v. Green Shades
Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018).  Here, accepting all factual allegations in
the '229 Patent as true and drawing all reasonable inferences in favor of Plaintiff, there is still
no plausible claim of inventiveness in Claim 1.  Thus, Claim 1 of the '229 Patent fails both step
one and step two as set forth in Alice and therefore is patent-ineligible.[10]

---

[9] According to the court, the "algorithm" is merely describing the transfer of data from a "PC
type computer (38, 106) to the database server (32,90), to the subscriber area (28,80), to the
subscriber PC (12,72), then to return the completed forms from the subscriber PC to the
subscriber area and back to the database server." BillingNetwork Patent, Inc., v. Cerner
Physician Practice, Inc., No. 8:04-cv-1515-T-27MAP., 2006 WL 263601 at *19 (M.D. Fla.
Feb. 2, 2006).

[10] Although Plaintiff's Complaint asserts infringement of only Claim 1, Defendant still argues
that the unasserted claims are also ineligible under § 101.  The unasserted Claims are
substantially similar to Claim 1 which is representative of the other claims.  As such, they also
are ineligible for patenting under § 101.

## V.      CONCLUSION

For all these reasons, Defendant's Motion to Dismiss (Doc. No. 12) will be granted.  An appropriate Order follows.